**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JILL A. EWING,**

                       **Plaintiff,**

   v.                                                            **5:11-cv-01418**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

                       **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

### I. INTRODUCTION

Jill A. Ewing ("Plaintiff") brought this suit under the Social Security Act ("Act"), 42 U.S.C. § § 405(g), 1383(c)(3) to review a final determination of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and child disability benefits (CDB). Plaintiff argues that the decision of the Administrative Law Judge ("ALJ") denying her applications for benefits was not supported by substantial evidence and was contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards. Pursuant to Northern District of New York General Order No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

## II. BACKGROUND

**A. Procedural History**

On September 15, 2002, the claimant protectively filed Title II applications for a period of disability and disability insurance benefits (DIB), and for child disability benefits (CDB). On September 26, 2002, the claimant protectively filed a Title XVI application for supplemental security income (SSI).

After all three applications were initially denied on March 5, 2003, a hearing was held before an Administrative Law Judge on May 3, 2004. Plaintiff testified, as well as a medical expert and a vocational expert. On July 18, 2005, ALJ William B. Russell issued a decision finding that Plaintiff was not disabled under the Act, and thus, she was not entitled to DIB, SSI, or CDB benefits. On January 6, 2006, the Appeals Council denied Plaintiff's request for review.

Plaintiff then commenced an action in this Court on March 3, 2006. Case No. 5:06-CV- 0271(GHL). On August 7, 2007, Magistrate Judge Lowe[1] remanded the matter to the Commissioner because (1) the ALJ failed to provide "good reasons" for the weight he afforded the opinion of Plaintiff's treating physician; (2) the ALJ's finding that Plaintiff had the RFC to perform other work was not supported by substantial evidence; and (3) the ALJ improperly addressed Plaintiff's credibility. Id. at dkt. No. 12.

On August 27, 2008, the Appeals Council vacated the final decision and remanded the claims to an Administrative Law Judge for further proceedings consistent with Magistrate Judge Lowe's decision. A supplemental hearing was scheduled but no hearing

---

[1]The parties consented to have the matter determined by Magistrate Judge Lowe.

was held because Plaintiff waived her right to appear at the hearing. On April 16, 2009, ALJ Elizabeth W. Koennecke issued a decision denying the claimant's Title II claims (DIB and CDB) and allowing her Title XVI claim (SSI), with an established onset date of February 12, 2002. As to the DIB and CDB claims, the ALJ found, *inter alia*, that prior to September 19, 1981,[2] Plaintiff was not disabled and was capable of performing sedentary work. This became the final decision of the Commissioner.

Plaintiff again appealed to this Court, arguing that ALJ Koennecke failed to give appropriate weight to the Plaintiff's treating physician's opinion, and erroneously discredited the Plaintiff's testimony about her limitations. Magistrate Judge Lowe issued a decision on March 31, 2011, reversing and remanding the denial of benefits. 5:09-CV-0932 (GHL). In this regard, Magistrate Judge Lowe found that remand was required because:

> (1) "[T]he ALJ failed to provide good reasons for her rejection of the treating physician's opinion" and "failed to discuss clearly whether the opinion was well-supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with the other substantial evidence in the record, as well as failed to discuss the six factors set forth in 20 C.F.R. § 404.1527(d)(1)-(6)." Id. p. 11;
>
> (2) "In the absence of 'good reasons' for rejecting [the treating physician's] opinion, the ALJ should not have reached the issue of Plaintiff's credibility." Id. p. 16; and
>
> (3) "[T]here is a gap in the record regarding Plaintiff's student status from 1981 to 1986. This time period is significant because it is during the time period in question. Therefore, the Commissioner is directed to develop the record in this regard." Id. p. 17.

On May 4, 2011, the Appeals Council vacated the final decision of

---

[2]In order to receive childhood disability benefits, Plaintiff's disability must have commenced prior to September 19, 1981, the date when she attained the age of 22. *See* 20 C.F.R. § 404.102.

3

the Commissioner and remanded the claims to ALJ Koennecke for further proceedings consistent with Magistrate Judge Lowe's decision. Only Plaintiff's Title II claims (DIB & COB) were before the ALJ.[3]

ALJ Koennecke notes in her August 10, 2011 Decision that Plaintiff "knowingly and voluntarily waived in writing the right to personally appear and testify at a hearing," and "provided nothing further in response to [the ALJ's] request to [address][4] defects raised in the District Court order." Tr.[5] 4K & 4P. Plaintiff asserts that while she waived her right to an in-person hearing, she "submitted as much documentation as she could find regarding her student status from 1981 to 1986." Pl. MOL p. 3 (citing Tr. 740, 754-798). Page 740 of the transcript is the Notice of Order of Appeals Council Remanding Case to Administrative Law Judge,[6] and pages 753[7] through 798 consist of: (1) a January 10, 2010 affidavit from Plaintiff submitted in the second case handled by Judge Lowe;[8] (2) transcripts from the universities and colleges Plaintiff attended; (3) a July 6, 2011 affidavit from Plaintiff with 31

---

[3] The ALJ notes that the April 16, 2009 decision regarding Plaintiff's Title XVI claim is not disturbed and remains in effect, and that Plaintiff is currently in pay status on this claim.

[4] The ALJ Decision is missing a word where the brackets appear. Based on the context of the sentence, the Court presumes the missing word is "address."

[5] "Tr." refers to the administrative transcript.

[6] Plaintiff may be referring to transcript page 746, which is her waiver of personal appearance before the ALJ.

[7] Although not specifically cited, the Court references an affidavit from Plaintiff contained in the record at Tr. p. 753.

[8] In the affidavit, Plaintiff asserts that she attended various colleges in the early 1980s on a part time basis "because of my asthma, the accompanying respiratory infections and fatigue, and the effects of steroid treatment" prevented full-time attendance.

4

attached diary entries from 1978 through 1981;[9] and (4) a letter from Plaintiff's counsel to ALJ Koennecke enclosing and commenting on the aforementioned 6/6/11 affidavit and attached diary entries.

ALJ Koennecke's decision became the final decision of the Commissioner, and Plaintiff thereafter appealed this decision to this Court, which is the subject of this Decision and Order.

**B. Plaintiff's Contentions**

Plaintiff contends:

1. The Administrative Law Judge erroneously failed to provide good reasons for refusing to give controlling weight, or even extra weight, to the opinion of the plaintiffs treating physician, Dr. Daniel Blumkin, M.D.;

2. The Administrative Law Judge's determination that the plaintiff had the residual functional capacity to perform other work is contrary to law and not supported by substantial evidence.

3. Plaintiff's claim should be reversed and remanded solely for the payment of benefits.

Defendant opposes Plaintiff's appeal, contending that the Commissioner's decision should be affirmed.

### III. DISCUSSION

**A. Standard of Review**

The Court's review of the Commissioner's determination is limited to two inquiries. *See* 42 U.S.C. § 405(g). First, the Court determines whether the Commissioner applied

---

[9]Plaintiff asserts in the affidavit that "[s]ince [her] claim was denied, it occurred to [her] that diaries [she] kept during the relevant time period may be helpful." Attached are diary entries that refer to "[Plaintiff's] complaints of symptoms of allergies and asthma." Plaintiff further contends that the "diary does not reflect all the asthma attacks or treatment [she] had during this period."

5

the correct legal standard. *See Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998); *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990); *Shane v. Chater*, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997)(Pooler, J.)(citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). Second, the Court must determine whether the Commissioner's findings are supported by substantial evidence in the administrative record. *See Tejada*, 167 F.3d at 773; *Balsamo*, 142 F.3d at 79; *Cruz,* 912 F.2d at 11; *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982). A Commissioner's finding will be deemed conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also, Perez*, 77 F.3d at 46; *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)("It is not the function of a reviewing court to determine de novo whether a Plaintiff is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.")(citations omitted). In the context of Social Security cases, substantial evidence consists of "'more than a mere scintilla'" and is measured by "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)). Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. *See Quinones v. Chater*, 117 F.3d 29, 36 (2d Cir. 1997)(citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir.1 982)); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990). Although the reviewing court must give deference to the Commissioner's decision, the Act is ultimately "'a remedial statute which

must be "liberally applied;" its intent is inclusion rather than exclusion.'" *Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir. 1990)(quoting *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir. 1983)).

**B. Analysis**

    **1. The Framework for the Commissioner's Decision**

Entitlement to disability benefits under the Act is conditioned upon compliance with all relevant requirements of the statute. In order to be entitled to disability insurance benefits under Title II of the Act, a claimant must establish that she became disabled prior to the expiration of her insured status. 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1). It is well established that evidence of an impairment which reached disabling severity after the expiration of insured status, or which was exacerbated after such expiration, cannot be the basis for the determination of entitlement to a period of disability and disability insurance benefits, even though the impairment itself may have existed before the claimant's insured status expired. *See Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989) ("A 'period of disability' can only commence, however, while an applicant is 'fully insured.' . . . [R]egardless of the seriousness of his present disability, unless [the claimant] became disabled before [the date last insured], he cannot be entitled to benefits." (citations omitted)). In this case, Plaintiff's date last insured was June 30, 1982. Tr. 93, 747.

Under certain circumstances, Title II of the Act also provides benefits to an adult child of an individual who is entitled to old-age or disability insurance benefits or who dies

a fully or currently insured person.[10] *See* 42 U.S.C. § 402(d)(1). A claimant over the age of eighteen is entitled to child's insurance benefits on the earnings record of the insured individual if the claimant: (1) has applied for benefits; (2) is the child of the insured person; (3) is dependent on the insured individual; (4) is not married; and (5) is under a disability (as defined by the Act) which began before she became twenty-two years of age. *See id.*; 20 C.F.R. § 404.350. Here, Plaintiff attained the age of twenty-two on September 18, 1981. Tr. 79. *See* 20 C.F.R. § 404.102.

To be found disabled within the meaning of the Act, the claimant must be unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act further requires that the claimant could be found disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do his previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The Commissioner's regulations set forth a five-step sequential analysis for evaluating disability claims, summarized as follows:

---

[10]Plaintiff's claim for childhood disability benefits is based upon her father's account. There is no dispute that Plaintiff's father's account allows Plaintiff to apply for such benefits.

| | | |
|---|---|---|
| Step 1: | | If the claimant is currently engaged in substantial gainful employment, she will be found not disabled. |
| Step 2: | | If the claimant does not have a severe medically determinable impairment that meets the duration requirement, she will be found not disabled. |
| Step 3: | | If the claimant has a severe impairment that meets or equals an impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P, she will be found disabled. |
| RFC: | | The Commissioner determines the claimant's residual functional capacity (RFC). |
| Step 4: | | The Commissioner evaluates whether the claimant's RFC would allow her to perform her past relevant work. If so, she will be found not disabled. |
| Step 5: | | The Commissioner considers the claimant's RFC, age, education and past work experience to determine whether she is capable of performing other work. If the claimant cannot perform other work, she will be found disabled. If the claimant can perform other work, she will be found not disabled. |

*See* 20 C.F.R. § 404.1520. The claimant has the burden of proof throughout the sequential evaluation, with the exception of the Commissioner's burden at step five to show that other work the claimant can perform exists in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512; *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *see also Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

**C. The ALJ's Decision**

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity after her January 1, 1981 alleged disability onset date. Tr. 4M. The ALJ concluded

9

at the second step that Plaintiff's asthma was a severe impairment. Tr. 4M-4N. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments or listings). Tr. 4N.

After considering the evidence in the record, the ALJ found that, prior to attaining age twenty-two and through her date last insured, Plaintiff had the residual functional capacity to lift and carry ten pounds occasionally and less than ten pounds frequently, sit six hours in an eight-hour day, and stand and walk two hours in an eight hour day.[11] Tr. 4N. The ALJ further found that Plaintiff had to avoid concentrated exposure to respiratory irritants. Tr. 4N.

At step four, the ALJ found that Plaintiff did not have any past relevant work. Tr. 4Q. At step five, the ALJ considered Plaintiff's residual functional capacity and vocational factors in determining whether she would be able to perform other work. Tr. 4Q-4R. Based on the framework of section 201.27 of the Medical-Vocational Guidelines contained in 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ found that, prior to attaining age twenty-two and through her January 30, 1982 date last insured, Plaintiff would have been able to perform jobs existing in significant numbers in the national economy. Tr. 4Q-4R. The ALJ concluded that Plaintiff was not disabled within the meaning of the Act during the period at issue. Tr. 4R.

---

[11]The limitations assessed by the ALJ generally correspond to the requirements of sedentary work, which involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a). Sedentary work also requires that an individual be able to stand and walk for a total of approximately two hours, as well as sit six hours, during an eight-hour workday. Social Security Ruling (SSR) 96-9p, 1996 WL 374185, at *3; *see* 20 C.F.R. § 404.1567(a).

**D. Whether the ALJ erroneously failed to provide good reasons for refusing to give controlling weight, or even extra weight, to the opinion of the plaintiffs treating physician, Dr. Daniel Blumkin, M.D.**

The Court first examines Plaintiff's contention that the ALJ erroneously failed to provide good reasons for refusing to give controlling weight, or even extra weight, to the opinion of Plaintiffs treating physician, Dr. Daniel Blumkin, M.D. As Magistrate Judge Lowe explained, according to the "treating physician's rule,"[12] the ALJ must give controlling weight to the treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105 (2d Cir. 2003); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (*citing Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir.1998)).

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. Under 20 C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following six factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors.

---

[12]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." <u>de Roman v. Barnhart</u>, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

*See de Roman*, 2003 WL 21511160, at *9 (citing C.F.R. § 404.1527(d)(2)); *see also Shaw*, 221 F.3d at 134; *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).

ALJ Koennecke gave little weight to Dr. Blumkin's opinion, and addressed the reasons why in the portion of her decision addressing Plaintiff's residual functional capacity. The Court finds that, due to the nature of Plaintiff's challenges, it is appropriate to set forth the ALJ's RFC determination. In this regard, ALJ Koennecke wrote:

> Prior to attaining age 22 and through the date last insured, the claimant had the residual functional capacity to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, sit six hours in an eight-hour day, and stand and/or walk two hours in an eight-hour day; but needed to avoid concentrated exposure to respiratory irritants.
>
> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.
>
> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.
>
> The claimant asserted that, since January 1, 1981, she had been unable to

12

work on a regular basis (Testimony, May 3, 2004 Hearing). She reported fatigue, needing to rest often, frequent respiratory infections, headaches, a sore throat, congestion, medication side effects, and a limited ability to climb stairs and walk far (Exhibits 1E, 4E, and 13E; and Testimony, May 3, 2004 Hearing), Yet, the claimant stated that in 1981 and 1982 she went to college part-time and in 1981 worked as a waitress part-time, a few afternoons a week (Exhibits 13E and 15E; and Testimony, May 3,2004 Hearing).

According the claimant the greatest benefit of the doubt, her school activities were performed at least at a sedentary exertional level. However, she would have had to walk to class, climb stairs, carry books, etc., and there was no evidence or testimony of special accommodations. Furthermore, the claimant completed her degree, demonstrating her ability to perform sedentary or more exertion on a regular and continuing basis. As was noted above, the claimant also worked part-time as a waitress. The Dictionary of Occupational Titles indicates that work as a waitress generally requires light exertion (e.g. DOT #311.477-018). Thus, in 1981, the claimant was performing at least a sedentary level of exertion at school and a light level of exertion at work. While each of those activities was performed on a part-time basis, together they amounted to full-time activity. Additionally, there was no evidence of the claimant being absent from school or her waitressing job 40 percent of the time.

A history of asthma does not equate to evidence of active treatment for such. Although evidence since 1983 documented a "history" of asthma, the record was devoid of any records documenting active treatment for asthma, physical examinations, or even shortness of breath, prior to the claimant attaining age 22 and/or through the date last insured.

The claimant indicated that she had been seen in the emergency room every three months (Testimony, May 3, 2004 Hearing). However, despite the Administration's efforts to obtain the records from Cayuga Medical Center (formally Tompkins Community Hospital), no records from 1981 or 1982 were received (Exhibits 10OE, 14F, and 21F). Nonetheless, the claimant stated that when she went to the emergency room she had immediate relief (Testimony, May 3, 2004 Hearing).

The only medical records in evidence from before the claimant attained age 22 and through the date last insured were treatment notes regarding allergy injections, which do not document any objective medical findings, diagnoses, or other treatment regimens (Exhibit 11F, pages 54-55).

Although the claimant's diaries are not treatment records, they were considered, however they evidence short, acute exacerbations two to three times a year (Exhibit 17E), which is not inconsistent with the ability to

13

perform full-time work. Additionally, despite the claimant's allegations, her diaries indicated that the claimant traveled to Europe and rode her bike (Exhibit 17E), activities that require greater than a sedentary level of exertion and exposure to outdoor and indoor respiratory irritants, large numbers of people, potential extremes of temperature etc. Her diaries support the conclusion that during the period at issue the claimant had brief exacerbations of her asthma but that she otherwise led a full and productive life that included school, work, travel and exercise. This is not indicative of a disabled person.

There were no assessments of residual functional capacity made prior to the claimant attaining age 22 or through the date last insured. The consultative examiner did not examine the claimant until 2003, more than two decades after the claimant attained age 22 and after the date last insured, and did not provide a retrospective opinion (Exhibit 3F). Therefore, his opinion was given no weight regarding those periods of time. The 2009 assessment of Ellyn Sellers-Felin, M.D. was not retrospective (Exhibit 23F); therefore, it was also given no weight regarding the periods of time prior to the claimant attaining age 22 and through the date last insured.

On April 29, 2004, Daniel Blumkin, M.D. concluded that the claimant's asthma prevented her from participating in regular competitive work on a daily basis at least since 1979 (Exhibit 12F). Dr. Blumkin opined that the claimant was unable to regularly work in a competitive setting and could not be counted on to appear for work regularly within reasonable tolerances (Exhibit 12F). Dr. Blumkin specified that, since at least 1979, the claimant could not walk more than 15 minutes at a time, up to three or four times a day; could not lift or carry more than five pounds frequently; needed to avoid exposure to smoke, dust, respiratory irritants, and extremes in temperature; could not regularly appear at a worksite day in and day out; and would be absent from work due to asthma-related illness approximately 30 percent to 40 percent of the time (Exhibit 12F). Although Dr. Blumkin was a treating source, when he rendered the April 2004 opinion, it had been over two years since he treated the claimant.

Dr. Blumkin's opinion, regarding the period of time prior to the claimant attaining age 22 and through the date last insured, was not supported by medical evidence. There were no records, from those time periods, of active treatment for asthma, physical examinations, or even shortness of breath. Although Dr. Blumkin indicated that he had treated the claimant for moderate to severe asthma from 1979 to 2002, he only specified the number of times he treated her for asthma for the period between 1985 and 2002 (Exhibit 12F). He acknowledged that the claimant's records from Family Medicine Associates did not reflect the claimant presenting with asthma when he (Dr. Blumkin) first saw her in 1979 (Exhibit 12F). The majority of the records

14

reviewed and referenced by Dr. Blumkin were from after 1982 (Exhibit 12F). Furthermore, all of the incidents cited by Dr. Blumkin occurred after 1982. Although Dr. Blumkin indicated that the claimant was treated for asthma from 1980 to 1982 by Elliot Rubinstein, M.D., he acknowledged that those records were no longer available (Exhibit 12F). The record was devoid of medical evidence to support Dr. Blumkin's opinion regarding the period prior to the claimant attaining age 22 and through the date last insured.

Dr. Blumkin's opinion was inconsistent with the claimant's activities. The claimant's school and work activities required walking longer than 15 minutes at a time and lifting/carrying greater than five pounds. The claimant completed her degree (Exhibit IE, page 8), which is inconsistent with Dr. Blumkin's conclusion that the claimant would not be able to appear at a worksite day in and day out and would be absent 40 percent of the time. Dr. Blumkin's opinion was also inconsistent with the claimant's activities after 1982. In 2000, the claimant reported camping a lot (Exhibit 11F, page 13). In 2001, she reported gardening and bike riding for exercise (Exhibit 2F, page 3). Each of those activities requires greater than a sedentary level of exertion. In 2001, the claimant was also thinking about becoming pregnant (Exhibit 2F, page 4), a course of action that would require more than sedentary exertion and showing up more than 40 percent of the time. Dr. Blumkin's opinion, regarding the period prior to the claimant attaining age 22 and through the date last insured, was inconsistent with the claimant's activities. The magistrate indicated that there was no information provided about the exertional demands of camping, biking or gardening and the claimant provided nothing further in response to my request to defects raised in the District Court order. But it is reasonable to conclude based on common knowledge that each one of those activities requires more than sedentary exertion.

Given the above, Dr. Blumkin's opinion was given little weight regarding the period prior to the claimant attaining age 22 and through the date last insured.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible. Prior to attaining age 22 and through the date last insured, there were no medical records to support the claimant's allegations or establish the nature and frequency of the claimant's treatment. The claimant's claims were inconsistent with her activities. Additionally, the claimant applied for benefits more than two decades after the alleged onset of disability, which suggested that she did not consider herself disabled as far back as she now alleges.

15

> The above residual functional capacity finding was supported by the claimant's activities and the absence of treatment records showing even maintenance treatment, little lone [*sic*][13] emergent care, for the claimant's asthma, prior to the claimant attaining age 22 and through the date last insured. Furthermore, the claimant reportedly had difficulty working at the light exertional level; therefore, the residual functional capacity finding afforded her the benefit of the doubt.

Tr. 4N-4Q.

As this decision demonstrates, ALJ Koennecke's determination to give Dr. Blumkin's opinion little weight was based on a thorough consideration of the record; took into account the proper legal standard for such an assessment; and was supported by substantial evidence. Although the ALJ did not explicitly list the six factors when determining the weight to give Dr. Blumkin's opinion, the decision indicates that the ALJ considered (1) length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the supportability of Dr. Blumkin's opinion, (4) the consistency of the opinion with other objective medical evidence, (5) Dr. Blumkin's specialization, and (6) other factors including the activities that Plaintiff was able to partake in during the relevant time. While Plaintiff may disagree with the Commissioner's determination, this Court's function is not to conduct a *de novo* review or substitute its opinion for that of the Commissioner. Rather, the Court is to determine whether the Commissioner applied the correct legal standards in reaching his decision, and whether his decision is supported by substantial evidence in the administrative record. As to the decision to give Dr. Blumkin's opinion little weight, the Court finds that the Commission's decision meets both criterion. Therefore, Plaintiff's argument regarding the

---

[13]Based on the record, the Court presumes the ALJ intended to write "let alone."

16

weight afforded Dr. Blumkin's opinion fails to present a basis for reversal.

**E. Whether the Administrative Law Judge's determination that the plaintiff had the residual functional capacity to perform other work is contrary to law and not supported by substantial evidence.**

The Court next turns to Plaintiff's argument that the ALJ's RFC determination is contrary to law and not supported by substantial evidence.

A residual functional capacity assessment is based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1512(b), 404.1545. If the claimant has a medically determinable impairment that could reasonably be expected to cause her alleged symptoms, the ALJ must evaluate the credibility of the claimant's subjective complaints and allegations of disability based on the record as a whole, including the objective medical evidence, medical source opinions, and other relevant evidence. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186.

The only treatment records from the relevant period addressed Plaintiff's allergy injections, but made no mention of asthma or asthma treatment. Tr. 4M, 4O; *see* Tr. 275-78. The ALJ noted that records in the years following Plaintiff's date last insured mentioned a history of asthma, but properly observed that a history of asthma was not equivalent to evidence of active treatment for asthma. Tr. 4M, 4O. This Court has consistently recognized that evidence of the presence of an impairment, and even evidence of treatment for such an impairment, is not in itself sufficient to show that the impairment limited a claimant's ability to perform work activities. *See, e.g., Tryon v. Astrue*, No. 5:10–CV–537 (MAD), 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) ("mere presence of a disease or impairment, or establishing that a person has been diagnosed or

17

treated for a disease or impairment is not, itself, sufficient to deem a condition severe.") (internal quotation marks and citations omitted). As the ALJ noted, there was no evidence from the relevant period documenting any objective medical findings or active treatment for asthma prior to the date last insured. Tr. 4O.

Moreover, it was Plaintiff's burden to demonstrate that her residual functional capacity precluded any substantial gainful activity during the period at issue. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say you are disabled. You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say you are disabled . . . ."); 20 C.F.R. § 404.1545(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his medical condition, to do so."). Although the ALJ resolved the issue at step two in Plaintiff's favor and found that Plaintiff's asthma was a severe impairment because it likely caused more than minimal limitations on her ability to perform basic work activities prior to her date last insured, the absence of any treatment records mentioning asthma during the relevant period supports the ALJ's finding that Plaintiff could still have performed a range of sedentary work. Tr. 4M-4N. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983)("The [Commissioner] is entitled to rely not only on what the record says, but also on what it does not say.")(citations omitted). Plaintiff has not pointed to evidence that the ALJ overlooked that demonstrates that

Plaintiff had limitations which would preclude any substantial gainful activity prior to her June 30, 1982 date last insured.

The ALJ's residual functional capacity assessment is also supported by the nonmedical evidence in the record of Plaintiff's activities during the relevant period. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186. As the ALJ noted, during this time Plaintiff was attending college part-time while simultaneously working part-time as a waitress. Tr. 4N-4O; see TR560-61, 756. The ALJ also considered Plaintiff's diary entries from this period. Tr. 4O; see Tr. 761-95. As the ALJ observed, notwithstanding intermittent asthma symptom exacerbations, these diary entries showed that Plaintiff maintained school, work, travel, and exercise activities which supported the finding that she could perform a range of sedentary work through her date last insured. Tr. 4O. The mere presence of symptoms is insufficient to show disability under the Social Security Act, rather the claimant must show that her symptoms would preclude any substantial gainful activity. 20 C.F.R. § 404.1529(c)(1); *see Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983) ("[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment."); SSR 96-7p, 1996 WL 374186, at *2 ("an individual's symptoms, including pain, will be determined to diminish the individual's capacity for basic work activities to the extent that the individual's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record").

The Court finds that, in determining Plaintiff's RFC, the ALJ applied the correct legal standard and her findings are supported by substantial evidence in the administrative

19

record. Therefore, Plaintiff's argument in this regard fails to present a basis for reversal.

**F. Whether Plaintiff's claim should be reversed and remanded solely for the payment of benefits**.

Finally, because there is no basis for reversal of the Commissioner's decision, there is no basis for remand. *See Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 2000); *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999).

**V.     CONCLUSION**

For the reasons set forth above, Plaintiff's motion for judgment on the pleadings is DENIED, the Defendant's motion is GRANTED, and the decision of the Commissioner is AFFIRMED .

**IT IS SO ORDERED.**

Dated: March 22, 2013

*[signature: Thomas J. McAvoy]*
Thomas J. McAvoy
Senior, U.S. District Judge